IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **TERRY BRUCE SHERBERT, SR.,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | CV-04-BE-2617-E |
| ] | |
| **HONDA MANUFACTURING OF** ] | |
| **ALABAMA, LLC,** ] | |
| ] | |
| **Defendant.** ] | |
| ] | |

## MEMORANDUM OPINION

### INTRODUCTION

This case is before the court on Defendant's Motion for Summary Judgment (doc. 18), Plaintiff's Motion for Summary Judgment (doc. 21), Plaintiff's Motion to Strike (doc. 24), and Defendant's Motion to Strike (doc. 40). For the reasons set forth at the February 16, 2006 hearing, both Motions to Strike are **DENIED**. For the reasons addressed at the February 16, 2006 hearing, and further summarized below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

### BACKGROUND AND FACTS

Plaintiff Terry Bruce Sherbert sued Defendant Honda Manufacturing of Alabama, LLC, for a single count of failure to hire under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Plaintiff contends that, after Defendant extended him a conditional offer of employment, it failed to hire him because he informed a doctor during a physical examination that he had suffered a stroke. Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages.

Defendant Honda Manufacturing of Alabama operates a plant in Lincoln, Alabama. This

plant produces Honda Odyssey and Pilot vehicles, and employs approximately 4,400 individuals. Two jobs available at the plant that are pertinent to this case are the Equipment Service Associate ("ESA") and the Process Associate ("PA"). An ESA is responsible for equipment maintenance and repair tasks in all production areas of the plant, including areas that require respirators and permits to enter. A PA is a less skilled position, and pays less than the ESA position. A PA usually worked on the assembly line at the plant.

Defendant's employment application process is a lengthy one. It consists of multiple interviews, screening, and training sessions. If an applicant successfully completes the application process, he receives a conditional offer of employment and is required to undergo a physical examination. The exam is conducted by Concentra Medical Centers, a third party medical entity. The examination includes, among other tests, a pulmonary function test ("PFT"). The PFT measures an individual's lung capacity by requiring an individual to blow into a tube for six seconds. Applicants are required to score at least 70% on this test to wear a respirator.[1]  If a candidate is restricted from wearing a respirator, or has some kind of ADA disability, that fact is communicated to Defendant's Staffing Department on a document entitled "Accumulative Completed Physical List." If the candidate passes the physical exam, he is placed in an pool of available applicants until a vacancy opens up. At that time, his application will be pulled from the applicant pool and an offer extended. If an application remains in the applicant pool for more than a year after the conditional-offer physical examination, the candidate must have another physical examination.

Plaintiff initiated an application with Honda for employment as an ESA on August 18,

---

[1]Certain areas of Defendant's plant require the use of respirators due to atmospheric hazards associated with painting, grinding, and welding operations.

2002. He received a letter extending him a conditional offer of employment on April 3, 2003. However, during his physical exam, he scored a 62% on the PFT and was required to obtain a release from a pulmonologist to wear a respirator. He provided Defendant with a letter from a doctor regarding his asthma.[2] Concentra determined that Plaintiff was restricted from wearing a respirator, and informed Michelle Turner, an Administrator in Defendant's Staffing Department, of this fact. However, Turner did not withdraw Plaintiff's file from the applicant pool, nor did she send a letter to Plaintiff withdrawing the conditional offer of employment as an ESA. Turner testified that she did not withdraw Plaintiff's offer because she thought he might be considered for a PA employment position at Honda.

On April 29, 2003, Plaintiff suffered a stroke caused by high blood pressure. At the time of his stroke, Plaintiff was employed by Millcraft as a machinist. Plaintiff was absent from work at Millcraft from April 29, 2003 until September 2003. However, after undergoing physical rehabilitation, he returned to Millcraft with no work restrictions on September 25, 2003.

On May 7, 2004, Lynn Johnson, who worked in Defendant's staffing department, sent a letter to Plaintiff stating that, because more than a year had passed since Plaintiff's first physical examination, he would need to take another physical if he wished to remain in the applicant pool. Plaintiff reported for his second post-offer physical examination with Concentra on May 20, 2004. Dr. Tom Key was the physician who examined Plaintiff. Dr. Key testified that he had no knowledge of Plaintiff's previous exam. Plaintiff informed Dr. Key that he had suffered a stroke in 2003, and Dr. Key noticed that Plaintiff walked with a slight limp. Dr. Key examined

---

[2]Def.'s Mot. for Summ. J., Ex. D, Attachment 3, Letter from Ammar Shaheen, M.D. stating, in pertinent part, that "[Plaintiff] is to avoid dusts, smoke inhalation, smoking or any irritant inhaler for which he used the respirator mask frequently before with always good protection as Mr. Sherbert states. I think he could continue to use this as often as needed and to report to the doctor any breathing difficulties besides regular follow up evaluations."

3

Plaintiff, but decided not to perform the PFT because the PFT raises an individual's blood pressure, which might cause a stroke. Because Plaintiff did not take the PFT, Dr. Key annotated on Plaintiff's exam results that Plaintiff was not qualified to wear a respirator. This information was placed on the Accumulative Completed Physicals List.

On or about May 21, 2004, Lynn Johnson received the Accumulative Completed Physicals List. The list noted that (1) Plaintiff was restricted from using a respirator because the PFT had not been conducted; (2) Plaintiff had suffered a stroke; and (3) Plaintiff had to use a filter mask when exposed to dust or inhaled irritants.[3] The List also displayed an "x" marked in a column labeled "ADA Qualified - No."[4] Johnson testified that when she saw "no use of respirator" by Plaintiff's name she determined that he could not be offered an ESA position, based upon her knowledge that Defendant did not hire ESAs who were not capable of wearing respirators. On May 24, 2004, Johnson sent Plaintiff a letter saying that he was no longer being considered for employment. Thereafter, Plaintiff filed his Complaint.

On April 15, 2005, both parties filed Motions for Summary Judgment. Over the next ten weeks, the parties filed eight more motions directly related to the Summary Judgment Motions, ten responses, six replies, one sur-reply, one response to the sur-reply, and voluminous evidentiary submissions. The court disposed of six of these motions by written order, and set the remaining four motions for hearing on February 16, 2006.

At the February 16, 2006 hearing, the court denied Plaintiff's Motion to Strike (doc. 24), and Defendant's Motion to Strike (doc. 40). The motions remaining were Defendant's Motion

---

[3]Def.'s Mot. for Summ. J., Ex. A, Attachment 2, HMA Accumulative Completed Physical List.

[4]*Id*.

4

for Summary Judgment (doc. 21) and Plaintiff's Motion for Summary Judgment (doc. 21).  The court, based on its review of the parties' submissions, concluded that to establish a *prima facie* case of failure to hire based on ADA discrimination, Plaintiff must show (1) that he is disabled, or perceived as disabled; (2) that he is a qualified individual; and (3) that Defendant unlawfully discriminated against him because of his disability.  *Blundell v. Health Care Authority of the City of Huntsville*, 140 Fed. Appx. 154, 155 (11th Cir. 2005).  The court also determined that the parties' written submissions established a genuine issue of fact as to the second and third prongs of this test.  The issue before the court, with respect to the parties' oral arguments, was a narrow one – whether Plaintiff was disabled pursuant to the ADA.  This Memorandum Opinion focuses on that issue.

**STANDARD OF REVIEW**

Summary judgment allows a trial court to decide cases where no genuine issues of material fact are present.  *See* Fed. R. Civ. P. 56.  A court must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving

party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on [his] pleadings." *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. However, the nonmovant can defeat summary judgment by showing either a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law.

## DISCUSSION

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment, or © being regarded as having such an impairment." 42 U.S.C. § 12102(2). Neither party addressed whether Plaintiff had a record of such impairment;[5] accordingly, that issue is not before the court. Instead, this Opinion analyzes whether Plaintiff was disabled pursuant to the

---

[5]To show a record of impairment, the plaintiff must present a record showing that the impairment substantially limited one ore more major life activities. *Carr v. Publix Super Markets, Inc.*, 2006 U.S. App. LEXIS 2845, *8 (11th Cir. 2006) (noting that a physician's note containing X-rays and lifting restrictions was insufficient to establish a record of a disabling impairment.)

ADA, or was perceived by Defendant as disabled.

### I. Was Plaintiff disabled?

Neither party disputes that Plaintiff suffered from a physical impairment as a result of his stroke. However, the parties disagree as to whether this impairment substantially limited any of Plaintiff's major life activities. The term "major life activities" refers to activities "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Blundell Care Authority of the City of Huntsville*, 140 Fed. Appx. 154, 155 (11th Cir. 2005); citing 29 C.F.R. 1630.2(j)(1). The term "substantially limits" means "the inability to perform a major life activity as compared to the average person in the general population or a significant restriction as to the condition, manner or duration under which an individual can perform the particular activity." *Allen v. United States Postmaster General*, 2005 U.S. App. LEXIS 27737 *4 (11th Cir. 2005) (internal quotations omitted); *see also Health Care Authority of Huntsville*, 140 Fed. Appx. at 155.

The United States Supreme Court has noted that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled..." *Toyota Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 197 (2002). The Court further stated that "[i]n determining whether an individual is substantially limited in a major life activity...the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *Id*. at 196. Additionally, the Eleventh Circuit has noted "that courts consistently have held that someone who walks and...stands...moderately below average is not disabled under the Act. Moreover, a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks...does not constitute

a disability under the ADA." *Blundell*, 140 Fed. Appx. at 155; *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1223 (11th Cir. 2000) (noting that with respect to the term "substantial limitation...a diminished activity tolerance for normal daily activities...did not constitute a disability under the ADA"); *Hillburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1227 (11th Cir. 1999).

Defendant argues that Plaintiff is not substantially limited in any major life activity. Defendant points to Plaintiff's own deposition testimony, where he states:

> Q. You're able to do most anything you want to do physically?
> A. Yes.
> Q. Is there anything you can't do physically?
> A. I can't run.
> Q. Anything else?
> A. That's – running, and I can't jump, but I can do – as far as doing anything a regular old man will do, I can do.[6]

> Q. You can operate machinery?
> A. Yes.
> Q. You can drive a vehicle?
> A. Yes.
> Q. You can repair a vehicle?
> A. Yes.
> Q. You can operate heavy equipment?
> A. Yes.
> Q. You can operate dangerous equipment?
> A. Yes.
> Q. You can fire a rifle?
> A. Yes.
> Q. You can safely handle a gun?
> A. Yes.
> Q. You can safely handle a gun in front of small children?
> A. Yes.
> Q. You can fish?
> A. Yes.
> Q. You can hunt if you want to?
> A. Yes.

---

[6]Pl.'s Dep., p. 22.

8

Q. You can work a garden?
A. Yes.
Q. You can work garden tools?
A. Yes.
Q. As you described yourself, you're a very active person?
A. Yes.
Q. And there's really nothing you can't do is the way you put it earlier today; remember?
A. That's right.
Q. Is that all correct?
A. Yes.
Q. Now, the same would hold true with your – what you're describing as a limp, you can walk, can't you?
A. Walk, yes.
Q. And you don't need a cane to get around?
A. No.
Q. You don't need a walker?
A. No.
Q. You don't need a wheelchair?
A. No.
Q. You were able to work at Millcraft and do your full job duties?
A. Right.
Q. You're able to walk in the woods several miles when you go hunting? How much do you walk?
A. Yes.
Q. You're an active person, right?
A. Right.
Q. So have you now told me every what that you believe you are in any way handicapped is the words you used? Have we covered that?
A. Yes.[7]

Q. Just so the record is clear, is it correct that you have full use of your left arm?
A. Yes.[8]

In Response to Defendant's Motion for Summary Judgment, Plaintiff contends that because of the stroke-imposed limitations to his left leg and arm, he is limited in his "daily life activities of walking up inclines, running, jumping, and performing manual tasks. [He] cannot tell the different from hot and cold with his left arm and often has to use his right arm to steady

---

[7]*Id.*, pp. 208-10.

[8]*Id.*, p. 253.

his left."[9] In support of this contention, Plaintiff offers his own deposition testimony, his own affidavit, and the affidavit of his wife. Specifically, Plaintiff and his wife stated in their affidavits that Plaintiff is unable to climb a ladder, stand on a step-stool, change light bulbs, wash dishes, climb on the roof of the house, perform certain yard work, crawl under the house or his car, change a tire, or chop wood.[10] These affidavits were taken after Plaintiff was deposed, and after Defendant filed its Motion for Summary Judgment. Plaintiff also argues that Plaintiff's receipt of Social Security disability benefits is evidence of his disabled status under the ADA.

The court finds that Plaintiff failed to satisfy his burden of showing a genuine issue of material fact as to the first element of his *prima facie* case. Plaintiff's deposition testimony clearly articulates that Plaintiff is not substantially limited in any of life's major life activities as defined by the Supreme Court, the Eleventh Circuit, and the ADA. Further, the only evidence to the contrary is testimony offered by Plaintiff and his wife, and this evidence is devoid of specific facts that show Plaintiff is disabled under the meaning of the statute. *See Carr v. Publix Super Markets, Inc.*, 2006 U.S. App. LEXIS 2845 *7 (11th Cir. 2006) (finding no ADA disability when the plaintiff was able to take care of himself and had "pretty good" use of his right hand, and noting "[t]hat a person suffers a diminished activity tolerance for normal daily activities alone does not equate with a substantial limitation"); *Chanda v. Englehard/ICC,* 234 F.3d 1219, 1223 (11th Cir. 2000) (rejecting a physician's statement that the plaintiff's tendinitis restricted the major life activities associated with his right arm when the plaintiff acknowledged that he could perform daily activities such as dressing himself, driving, attending classes, or working at a computer); *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220 1227-28 (11th Cir.

---

[9] Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 30.

[10] Pl.'s Affid., ¶ 6; Faye Sherbert Affid., ¶ 14.

1999) (determining that a doctor's affidavit stating that the plaintiff had a "diminished capacity for running" is conclusory, not supported by facts, and insufficient to create a material issue of fact, particularly in light of the fact that the plaintiff stated in her deposition that she could walk, run, sit, stand, bathe, dress, cook, and work). Furthermore, the court does not find persuasive that Plaintiff's receipt of Social Security disability benefits creates a genuine issue regarding an ADA disability because the definition of disability under the ADA is different from the definition associated with Social Security benefits. *See* 42 U.S.C. § 12102(2); *compare* 42 U.S.C. § 423(d)(1)(A)&(B). Accordingly, there is no genuine issue of material fact as whether Plaintiff was disabled pursuant to the ADA.

**II. Was Plaintiff perceived as disabled?**

A person may be disabled under the ADA when he "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA." *Blundell Care Authority of the City of Huntsville*, 140 Fed. Appx. 154, 155 (11th Cir. 2005); *citing Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327, n. 2 (11th Cir. 1998); 29 C.F.R. § 1630.2(l). "As with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004).

Plaintiff argues that the Lynn Johnson, the individual who withdrew Plaintiff's conditional offer of employment, made her decision after reviewing the Accumulative Completed Physicals List. This list showed that Plaintiff had suffered a stroke and was restricted from wearing a respirator. Plaintiff contends that because Johnson withdrew her offer after reviewing

this list "and making no other inquiry is evidence that she immediately perceived him as disabled."[11]

Lynn Johnson testified, in both her deposition and through her subsequent affidavit, that she made the decision not to hire Plaintiff after reviewing the Accumulative Completed Physicals List.[12] She stated that she consulted no other documents when making this decision, and that she understood from the List that Plaintiff was restricted from respirator use, but not disabled.[13] The Accumulative Completed Physicals List contains four key pieces of information listed with Plaintiff's name: (1) he was restricted from using a respirator; (2) he had suffered a stroke; (3) he was required to use a filter mask when exposed to dust or inhaled irritants; and (4) *he was not ADA qualified*.[14] Because Johnson reviewed no documentation besides the Accumulative Completed Physicals List, no evidence exists (1) that Johnson perceived Plaintiff as being substantially limited in any major life activity by his stroke; or (2) that Johnson was informed that Plaintiff was disabled. Consequently, no genuine issue of material fact exists as to whether Defendant perceived Plaintiff as being disabled in accordance with the ADA.

## CONCLUSION

This issue before this court, for purposes of this Memorandum Opinion, is whether Plaintiff was disabled pursuant to the ADA. Defendant offered evidence to show that (1) Plaintiff was not disabled; and (2) Plaintiff was not perceived as disabled by Defendant. Plaintiff

---

[11] Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 35.

[12] Johnson Affidav., ¶¶ 9-11, 13; *See* Johnson Dep., p. 80.

[13] Johnson Affidav., ¶¶ 11, 13.

[14] Def.'s Mot. for Summ. J., Tab A, Attach. 2, Accumulative Completed Physicals List (emphasis added).

failed to establish a genuine issue of material fact as to either of these contentions. Defendant's Motion for Summary Judgment is, therefore, **GRANTED**. For the same reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.

DONE and ORDERED this 23rd day of February, 2006.

_/s/ Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE